```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/27/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,          :
                                   :
              Plaintiff,           :
                                   :
         - against -               :
                                   :
ANTHONY COLOMBO et al.,            :
                                   :
              Defendants.          :
------------------------------X

**MEMORANDUM AND ORDER**

04 Cr. 273 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This multi-defendant criminal case went to trial with six defendants[1] in January of 2007 (the "Trial"), resulting in a partial verdict and in a mistrial for those counts on which the jury did not reach a verdict. At the Trial, the jury failed to return a verdict for the charges against defendant Joseph Flaccavento ("Flaccavento"), and Flaccavento now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. For the reasons discussed below, the motion is denied.

### BACKGROUND

Flaccavento remains charged with conspiring to make and collect extortionate extensions of credit, with making extortionate extensions of credit, and with collecting

---

[1] Nineteen defendants were named in the original indictment. One had died prior to his indictment, and twelve plead guilty before trial.

extortionate extensions of credit, in violation of 18 U.S.C. §§
892 and 894 (the "Loansharking Counts").[2]   Flaccavento argues
that the government offered insufficient proof at the Trial to
show either that he conspired to commit loansharking or that he
made or collected extortionate extensions of credit.[3]

## DISCUSSION

### A.   Legal Standard

Federal Rule of Criminal Procedure 29 provides that, where
a jury has failed to return a verdict and the government's

---

[2] Flaccavento was initially charged with two RICO violations as well.  The
government dismissed the RICO charges against Flaccavento following the
Trial.

[3] Flaccavento also argues that the government has failed to show that his
alleged activities affected interstate commerce.  However, such proof is not
necessary to sustain a conviction pursuant to 18 U.S.C. §§ 891 - 894.   See
e.g. United States v. Calegro De Lutro, 309 F.Supp. 462, 464-67 (S.D.N.Y.
1970) ("In the introductory portion of the statute under consideration, Title
II of the Consumer Credit Protection Act, 18 U.S.C. 891-896, Congress made
the following pertinent findings . . .  '(3) Extortionate credit transactions
are carried on to a substantial extent in interstate and foreign commerce and
through the means and instrumentalities of such commerce. Even where
extortionate credit transactions are purely intrastate in character, they
nevertheless directly affect interstate and foreign commerce.') (citing
Consumer Credit Protection Act, Title II, Section 201(a)(1) and (3)); see
also United States v. Santos, 449 F.3d 93, 97 n.5 (2d Cir. 2006) ("'We
previously held that both drug dealing and loansharking, while illegal, have
an effect on interstate commerce'") (quoting United States v. Fabian, 312
F.3d 550, 555 (2d Cir. 2002) (abrogated on other grounds by United States v.
Parkes, --- F.3d ----, No. 05-3486-CR, 2007 WL 2317395 (2d Cir. August 15,
2007) (rejecting proposition that Congressional findings are sufficient as a
matter of law to show nexus with interstate commerce under Hobbs Act which,
unlike 18 U.S.C. §§ 891 - 894, requires proof of an effect on interstate
commerce as an element of the offense)); United States v. Perez, 426 F.2d
1073, 1081 (2d Cir. 1970) ("Congress has determined that all loan-sharking
activities should be prohibited, that even those 'purely intrastate in
character * * * directly affect interstate and foreign commerce,' and that
[18 U.S.C. §§ 891 - 894] [are] a necessary legislative response to eliminate
an obvious evil. We do not feel justified in setting aside these
determinations; we hold the statute constitutional."}.   Moreover, the
government introduced evidence that Flaccavento used a telephone, an
instrument of interstate commerce, to speak with Sitterly about the money
Sitterly owed to Colombo.   See generally United States v. Giordano, 442 F.3d
30, 39-41 (2d Cir. 2006).

evidence is insufficient to sustain a conviction, the Court must enter a judgment of acquittal.  Fed. R. Crim. P. 29(a) and (c). When considering a defendant's motion for acquittal under Rule 29, the Court must view the evidence "in the light most favorable to the government".  United States v. Zagari, 111 F.3d 307, 327 (2d Cir. 1997); United States v. Torres, 901 F.2d 205, 216 (2d Cir. 1990).  All reasonable inferences are to be resolved in favor of the prosecution, United States v. Rodriguez, 702 F.2d 38, 41 (2d Cir. 1983) (citing United States v. Artuso, 618 F.2d 192, 195 (2d Cir. 1980)), and a court may intrude on the jury function of assessing the credibility of witnesses only in "exceptional circumstances" such as "where testimony is patently incredible or defies physical realities." U.S. v. Perrone, No. 05 Cr. 774 (KMW), 2007 WL 43998, *1 (S.D.N.Y. January 4, 2007) (citing United States v. Ferguson, 246 F.3d 129, 133-34 (2d Cir. 2001) (internal quotation marks omitted)).  A Rule 29 motion will be granted where the evidence that the defendant committed the alleged crime is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."  United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (quoting United States v. White, 673 F.2d 299, 301 (10th Cir. 1982)).

**B.    Analysis**

Flaccavento argues that the government has not proved that
he participated in a loansharking conspiracy, that he played a
role in extending loans to a person who reasonably believed that
failure to make payments would be punished by criminal means, or
that he collected extensions of credit by using express or
implied threats of violence.[4]    Although Flaccavento makes a
reasonable case to support these arguments, the government has
provided evidence that, when viewed in the most favorable light,
is sufficient to support convictions for the Loansharking
Counts.

At the Trial, the government presented audio recordings,
witness testimony and documentary evidence to support the
charges against Flaccavento.[5]    Primarily, the jury heard
approximately 20 audio recordings of conversations among John
Sitterly (a government cooperator and the alleged loansharking
victim), Flaccavento, and Christopher Colombo (a co-defendant of
Flaccavento for whom Flaccavento allegedly collected
loansharking debts).[6]    The recorded conversations reveal
discussions between Sitterly and Flaccavento regarding "points"
(exorbitant interest rates) for Sitterly to pay on loans from

---

[4] See 18 U.S.C. §§ 891 - 894.
[5] Government's Memorandum of Law in Opposition to Defendant's Rule 29
Motions, dated June 28, 2007 ("Opposition") at 2/.
[6] Id.

4

Colombo;[7] regarding new loans for Sitterly from Colombo;[8]
involving Flaccavento encouraging Sitterly to make juice (or
interest) payments on outstanding loans;[9] and involving
Flaccavento warning Sitterly about Colombo.[10] The government
also presented testimony at the Trial from an expert witness,
John Carillo, who stated that certain of the recorded
discussions pertained to loansharking debts owed by Sitterly to
Colombo and collected for Colombo by Flaccavento,[11] and the jury
heard testimony from Sitterly who explained that, based on his
past experiences with Colombo, he was afraid of physical
violence if he did not repay his loans.[12] Sitterly further

---

[7] GX-936T.

[8] GX-937T; see also Tr. at 1117 ("[Government:] When Joseph Flaccavento
says . . . 'So whenever you want the next 7, let us know' . . . what did you
understand him to [] mean?   [Sitterly:] That meant that I could have an
additional $7,000 if I wanted.   [Government:] Then on lines 14 and 15, where
you say 'Yeah, but then I know what the number goes to, that would go to 18'
what did you mean?   [Sitterly:] That would represent the 3 points or 3
percent on 60,000 would be $1800 a week interest").

[9] See e.g. Tr. at 1124 ("[Government:] What is your understanding of what
[Flaccavento] means, he says you got to start the job Thursday?   [Sitterly:]
I've got to make my weekly juice payment.   [Government:] In lines 17 through
19, you say, 'If I can do a dime.' What do you mean by that?   [Sitterly:]
That's a thousand dollars.   [Government:] And when Joseph Flaccavento says, I
would like two dimes, what is your understanding of what he means?
[Sitterly:] $2000").

[10] GX-943-T; see also infra notes 11, 15.

[11] Tr. at 1026 ("[Government:] Based on your experience, what is this
conversation about?   [Carillo:] Joseph Flaccavento is acting as a collector
in a loansharking operation . . . Flaccavento is discussing a loan with John
Sitterly.   It's clear from this conversation, in my experience, that John
Sitterly is the borrower. He is delinquent in his payments, which is obvious
from the telephone call.   It's also obvious that Flaccavento is talking to
his superior to work out payments for the borrower.").

[12] Sitterly testified that his brother-in-law, Jeffrey Booth, whom Sitterly
had introduced to Colombo and who owed money to Colombo, had said to Sitterly
that he (Booth) "was up for nights, he couldn't sleep, he was sitting in a
rocking chair with a baseball bat because [Colombo and Flaccavento's father]
had threatened to come into the home." Id. at 1096.   Sitterly further
testified that, on one occasion, he was afraid that three men who were with

5

testified at the Trial that Flaccavento was responsible for collecting the loans Sitterly owed to Colombo,[13] that Flaccavento demanded payments from Sitterly in specific amounts and at specific, exorbitant interest rates,[14] and that Flaccavento said things to Sitterly that made Sitterly afraid for his physical safety if he did not comply with Colombo's demands.[15]

In his trial summation, and in the briefs submitted in support of Flaccavento's motion, counsel for Flaccavento has advanced the argument that the government mischaracterized Flaccavento's role in the events described during the Trial, incorrectly deeming him a "loanshark" when, in fact, he merely served as an intermediary between Sitterly and Colombo.

---

Colombo were going to hurt Booth because Booth was delinquent on payments owed to Colombo. Id. at 1098 ("[Colombo] said to fall back with him for a minute, and he said, 'This is what happens to people when they don't pay their debts.' At that point I thought Jeffrey was going to get a beating so I told Christopher that I would take care of the debt on Monday . . . .").

[13] Id. at 1106 ("There was a meeting between Christopher and myself and Joseph Flaccavento, and Christopher asked me if I was comfortable with making the payments in the future to Joseph Flaccavento. . . . I said yes."). The jury also heard evidence that, on May 15, 2001, Sitterly gave an envelope containing $1,500 in marked bills to Flaccavento to be given to Colombo as payment on a loan and that the same envelope, minus $400, was recovered from Colombo's house the next day. Opposition at 27.

[14] Tr. at 1027 ("[Carillo:] [Sitterly] asked if he could lower the points to make the interest payments easier, and Flaccavento says, 'Everybody else charges 6, 5, 6 points, which is a higher interest rate on a weekly basis.'"); see also supra note 9 and Tr. at 1125.

[15] See e.g. Tr. at 1107 ("[Government:] Were there things in the course of your dealings with Christopher Colombo and Nunzio Flaccavento and Joseph Flaccavento that made you fearful? [Sitterly:] Yes."); see also Tr. at 1125 (government's examination of Sitterly at trial regarding a conversation between Flaccavento and Sitterly during which Flaccavento allegedly told Sitterly about another conversation, regarding Sitterly, between Flaccavento and Colombo) ("[Government:] Where Joseph Flaccavento said . . . 'We won't tell him. We will show up at his house tonight', what is your understanding of who he is referring to? [Sitterly:] Chris Colombo is showing up at my house. [Government:] What do you understand that to mean? [Sitterly:] I am thinking that I am going to get hurt or something.").

6

Flaccavento's counsel suggests that Flaccavento only worked with Sitterly and Colombo in order to help Sitterly, whom Flaccavento had known for most of his life, and to protect his (Flaccavento's) father, who had previously collected money for Colombo and who had stolen a large sum of money given to him by Sitterly as repayment on debts owed to Colombo.[16]

The explanation offered by Flaccavento's counsel is plausible and a jury could reasonably reject the government's case, which turns primarily on the testimony of Sitterly, a convicted felon who has had a long career as a confidence man and who was working as a cooperator for the government both when he testified at trial and when he participated in the recorded conversations discussed above.  Nevertheless, a court may intrude on a jury's credibility function only where testimony is patently incredible or is in defiance of physical realities. Neither situation is present here.  Instead, viewing the government's evidence, including Sitterly's testimony, in its most favorable light, we find the testimony, recordings and documents discussed supra sufficient to support the Loansharking Counts.

---

[16] Id. at 1064 ("[Counsel for Flaccavento:] Our contention is that Mr. Flaccavento was accommodating Mr. Sitterly and acting as an intermediary, and that is an issue for the jury to decide. . . ."); see also Corrected Memorandum of Law in Support of Joseph Flaccavento's Rule 29 Motion, dated May 30, 2007 ("Flaccavento Motion") at 9-10.

## **CONCLUSION**

As the government has met its burden of providing sufficient evidence to support the charges against Flaccavento, Flaccavento's Rule 29 motion is denied.

**SO ORDERED.**

Dated:     New York, New York
           August 24, 2007

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

8

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for the Government

Jason Halperin, Esq.
Lisa Baroni, Esq.
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, NY 10007

Counsel for Joseph Flaccavento
Louis R. Aidala, Esq.
597 Fifth Avenue
New York, NY 10017